And if you want to reserve time, please watch the clock. Thank you very much. I have to reserve five minutes for a vote if I may. So good morning, and may it please the Court, my name is Jeffrey Wall, and I'm representing the appellant, Target Corporation, in this Wage and Hour matter. The case is about the technical application of the rules under state law for the regular rate of pay, but I think we'll see that the common sense principles should guide the analysis to the correct results. Section 510 of the Labor Code says that overtimes be paid at one-and-a-half times the regular rate of pay. The issue is how to calculate the regular rate of pay and how to apply it to the overtime premium that is payable. The analysis for overtime calculation consists of three moving parts. First, you have to figure out all the forms of pay that must be included in the regular rate calculation. Here there's no dispute. When you have multiple rates of pay in the same work week, the base rate, the shift differential rate if there is one, the holiday premium rate if there is one, those all get added together based on the number of hours worked, and that's your total wages earned for your straight-time wages. You then have to divide that by the hours worked, and that's in dispute in this appeal. Which are the hours that you count in that divisor? Do you count all hours worked, or do you count just the non-overtime hours worked? And third, once you've calculated the regular rate of pay, how does that get applied to the overtime premium which is owed? So let's talk first about the second part, which as I said, is in dispute, which is what are the hours that you use in the divisor? Plaintiffs argue, and the district court agreed, that under the Alvarado case, which is the state Supreme Court case dealing with lump sum bonuses, you use only non-overtime hours, and that that principle applies even if it's an issue of multiple rates of pay, such as shift differentials or holiday premiums. That's not what Alvarado says. Alvarado was very explicit that it only deals with a lump sum payment. In that case, it was an attendance bonus of $15. And the court said the reason why, in that instance, you don't use overtime hours is because the payment is made regardless of how many hours the employee works. It was simply a bonus for showing up. You show up for weekend work, you got the $15 bonus, whether you worked one hour or several hours. And therefore, the pay could not really be considered to be compensating for overtime hours. So therefore, the court said you don't include the overtime hours in the divisor, you just look at the non-overtime hours. That, by the way, is different than the federal rule. The federal rule is you would apply all the hours, but the state Supreme Court construed the state statute as saying that's only for, in a lump sum basis, the non-overtime hours. The court in Alvarado was expressly distinguishing the attendance bonus, or lump sum bonus in that case, and other types of compensation, which are hourly forms of compensation, or the compensation that could change for the number of hours worked. And the court, I think, made clear that the rule it was pronouncing only applies in that instance of a lump sum payment where you would use the non-overtime hours in the divisor. In fact, I think it conceded that when you had an hourly rate of compensation that would change for the number of hours worked, then you do include all the hours in the divisor, because the wages are, in fact, compensating for those overtime hours based on the number of hours that you work. And that's the principle that was used in the General Atomics case that we cite to the court. Now, in fairness, that was a wage statement case. That was not a regular rate of pay case as such. But in determining whether the employer in that case used the proper formatting for the wage statement, the court looked at how the overtime wages were calculated and endorsed the position of the employer that because we're talking about shift differentials, multiple rates of pay in the same work week, you do include the non-overtime hours and the overtime hours in the divisor. And therefore, that's how you get to your regular rate of pay. It's very, and this, by the way, is also what the DLSC says in its manual, in section 49.2.5. And we recognize that that isn't dispositive for this court. It is simply persuasive. But we do find it very persuasive because the DLSC is the expert agency in charge of interpreting and applying California law. We have all. The court. Yes, sir. The court didn't find that too persuasive, did it? So in Alvarado, the court expressly found that the DLSC guidance on how to calculate for lump sum bonuses was not conclusive, was not presidential. But I think it did find that it did carry some weight in its analysis. And it certainly found that it was correct. It ultimately found that the DLSC got it right. Well, the district court, of course, concluded that, I think in essence, that this case is not really governed by Alvarado, right? This court, Judge Bernal in our case, thought that the logic of Alvarado would apply here as well, and we respectfully disagree. Because again, Alvarado was very clear. It was talking about a unique type of compensation, namely an attendance bonus that had nothing to do with the number of hours worked. And that's simply not our case. This is about shift differentials and holiday premiums, which by definition, are paid based on the number of hours that you work. The more hours you work on a shift differential, the more hours you work on a holiday, the more pay that you get. So you have a direct proportion between hours worked, pay received, that's why the overtime hours should be included in the divisor. And I may say, Your Honors, they have Alvarado, which as I've explained, doesn't apply. They have nothing else they can point to. No authority, no administrative guidance, no court authority that says that their view of this is correct. Well, but there is, I guess, the general policy of California that we should construe labor laws against overtime pay and in favor of workers. So how do we apply that? Assuming we understand your point, Alvarado, reasoning of it supports your view, but doesn't explicitly support it, I don't think. How do we square that with that general presumption we have? So the general presumption only takes you so far. It doesn't mean that you override statutory construction or logic. And so Alvarado was making an exception to the FLSA rule that you do include all hours because of the way they construed the California statute. But in doing so, they were very clear this is only for those non-proportional forms of payment. Because Alvarado addressed the fact that that may cause a decrease in the regular rate of pay in that particular case. That's exactly right. But not universally applied, but in that particular case. That's right. Following up on Judge Lee's question, it may result in a diminution of the regular rate of pay. Because it's $15 in that case regardless of how many hours you work. So therefore, if you include the overtime hours, you're going to diminish the value of it the more overtime hours that you work. That logic simply doesn't apply in the shift differential or the holiday premium case. So if the principle were employee always wins, then sure, then we know what the outcome is. But that's never been the rule in California. We cite cases in the brief where the court said regardless of that general principle where the language or the logic doesn't support that outcome, we're still going to hold that the employer got this right. And we think that's the case here. Just so I'm clear, the class that was actually certified here. The class that was certified is all current and former employees who were paid shift differential or holiday premium, correct? That's the class we're dealing with here. That is correct. So we moved, the court did not allow us to bring a second motion for summary judgment when this new theory emerged. We sought summary judgment. The court refused to let us do that. So we brought a motion for judgment on the pleadings because it is a pure issue of law, which is which is the correct standard? Is it the Alvarado standard even though these are not lump sum bonuses or is it what the FLSA says, what the DLSE says and what we contend, what General Atomic says and what we contend the logic of Alvarado also says. Which is when the form of pay is proportionate to the number of hours worked, then you do include the overtime hours in the divisor. So that's one issue. The second issue is what we've called the 1.5 theory. And this deals with how do you apply the regular rate of pay once you calculate it to the overtime premium. So we have the reference in the statute. We have the references in the case law to 1.5 times the regular rate of pay. So I agree on the surface you might say, well, then it's very simple. Just figure out your regular rate of pay. Multiply that by 1.5 and that's your overtime. But if you looked at the cases and if you looked at the logic, in fact, what's really meant is that if you're already paying all the hours at the straight time wages, and just to be clear in our terms, straight time is not just the base rate of pay that includes shift differentials or holiday premiums, that's straight time. If you're paying that already, then that covers the one hour component of the regular rate of pay. And therefore, all you're talking about is the half hour premium, the extra half hour at the regular rate of pay that the employee gets for the overtime. And all the cases that we've cited to you use that phraseology, that formulation exactly. They say if you've paid the straight time wages, then you owe the one half premium. And that's exactly what Target does. Now what's interesting is if you adopted Plaintiff's Theory and if you use, calculate the regular rate of pay and then mathematically apply 1.5 to that, depending on when the overtime hours were worked, you might actually be paying less to the employee than you would under the way that Target, and we say all their employers do. And why is that? Regular rate of pay is a weighted average if you have multiple rates of pay. So let's keep a simple example in mind. Fifteen bucks is your base rate, one dollar extra for shift differential. If you work an overtime hour that is a shift differential hour, Target's methodology would be, okay, you get fifteen dollars, space, one dollar shift differential, you get sixteen dollars, that's your one hour, the one hour, one half hour overtime, and then we'll do the regular rate of pay calculation to be a half hour premium. By definition, if you have both base hours and shift differential hours in the same work week, that regular rate of pay is going to be a weighted average that's going to be less than sixteen dollars. By definition, the base rate brings down the average. So therefore, if you pay 1.5 times regular rate of pay using that regular rate of pay number, you're paying less than sixteen dollars for that first hour. You're paying whatever number of hours are fifteen point something. That's a worse result for the employee. So that doesn't make any sense. On the flip side, trying to understand this, what are the instances when workers would be paid more? Is it when their overtime hours coincides with the shift differential? No, just the converse. Their formulation would do employees better if they're working base rate hours for overtime. So in my example, if you're working a base rate that happens to be an overtime hour, it'd be fifteen dollars plus one-half the regular rate of pay. That's not as good as one-half times the regular rate of pay where the regular rate of pay is a weighted average that's more than fifteen. So in fairness, there are instances where employees would do worse, instances where employees would do better. We don't think that's what's imagined here. We don't think that's what the cases are talking about. Well, the cases are saying is by using the terminology 1.5 regular rate of pay, all we really mean is you pay your wages at the applicable straight-time rate. The standard rate. Right. Base, shift differential, whatever applies, and then the regular rate of pay comes in for that half-hour premium. And that's exactly what Target did here. And it's very interesting because if you look at an array of hours, either where the base hours are the non-overtime hours or the base hours are the overtime hours or vice versa, the way Target does it, you always get the same outcomes. The way Plaintiffs want to do it, you get these differing outcomes, where in some cases, employees would do better. In some cases, employees would do worse. That doesn't make any sense. That can't be the rule here. There needs to be a neutral principle that's going to apply in all cases. And so that's where we are. We tried very hard to get this before the judge. Unfortunately, he certainly heard in the Alvarado case. He didn't want to hear on the other part. And so we've come to you to hopefully get this straightened out. With a certified class, it's obviously a huge deal if the case goes forward. And we think the rules of the road really need to be established by this court. And then we can proceed back to the district court. So with that, I'm happy to answer any questions that the panel might have. Great. Thank you. Thank you so much. Good morning, Your Honor. Scott Brooks for the Plaintiff, Ms. Bowen and Ms. Mitchell and the certified class. I just want to follow the last point that counsel was discussing. And that is the instances where, according to their method, or how they characterize our method, I should say, that an employee can be underpaid by using the 1.5 regular rate of pay. And I'd just like to give that some context. What they're arguing, and they've only identified one instance, and that is where an employee is working overtime at a shift differential. Okay? A shift differential is by definition, if you will, an incentive payment to get folks to work undesirable shifts. We're having trouble getting people who want to work at night, who want to work overnight, who want to work undesirable hours, who, you know, want to work on the weekends, things like that. We're having trouble. So we're going to pay them more money to do that. Okay? So what they're saying is then, we, the employee doesn't benefit if not only do they work these undesirable hours, but they work overtime at these undesirable hours. Okay? That's the one instance. And I would argue that that is directly contrary to the public policy of California, which is meant to discourage overwork and discourage overtime. Literally to discourage it. Have more employees. Don't overwork the ones you have. And again, that's the only aspect of what they call our methodology, which they say. So can you tell us when, I mean, it seems like for most instances, you guys are arguing, I mean, you're going to reach the same results. It seems like most of the debate here is whether 2 times, 3 times 4 is different from 2 times 4 times 3. I mean, I know, I don't want to add more math to, you know, a group of lawyers here. But it seems like for most of the time. So most of the time, it seems like you're going to reach the same result here. And counsel has identified one situation where it may hurt the worker. So what are the situations where it will help the workers? Well, it actually, what we contend the law is, and again, Alvarado is not the only authority. As the Alvarado Court makes clear, we have Section 510. But for the 1.5 there, you can focus on that. Well, I'm talking about the regular rate of pay. The 510 says that you must pay no less than the regular rate of pay. And the regular rate of pay has been defined as all of the compensation divided by, and we advocate under Alvarado, divided by the non-overtime hours worked. All right? So it's not the straight time. It includes the incentive compensation, whether it's flat sum, whether it's shift differential, holiday pay, whatever. The regular rate of pay, when you have those additional forms of compensation, is always higher than the base rate. So when the statute commands, and the wage order commands, you pay 1.5 times the regular rate of pay. It's not the straight base rate, unless there is no additional compensation. So. But hasn't Target fully paid the straight time wages that includes shift differentials and holiday premiums? They have not paid the regular rate of pay. And. But doesn't that include, doesn't that already include shift differentials and holiday premiums? The regular rate of pay? Their calculation of straight time wages. Well, their calculation of the total pay does. But when you get to the calculation of the overtime, it does not. And there's been a lot of back and forth, and if you read the briefs, your mind, I don't know if your mind numbs like mine, is all the hypotheticals and the different things. So first principles, if you will. I'm a wage and hour lawyer. I'm not overly burdened with intellect. So I go back to what is their statement of how they do it. What did the district court look at and adopt? Not my characterization of it, not Target's characterization of it, of the lawyers, excuse me. But what their, what their, what they put in their undisputed material facts. And this is the declaration of Mr. Kysershot. And he says. After calculating a team member's regular rate of pay for the work week, the software multiplies the regular rate of pay by one half to calculate the premium component of the overtime rate. That's the .5 of the 1.5, which the statute says has to be calculated at the regular rate. So we've got the .5 at the, at the, at the regular rate of pay rate. And then adds the premium component to the team member's base hourly rate. Not the regular rate of pay. In other words, it's not 1.5, the regular rate of pay. Their declaration, they've, they've, they've tried to argue away from it every way they can. But they've never denied it. They never came forward and said, Mr. Kysershot misspoke. I'm sorry, this isn't, isn't actually how it's done. They provided hypotheticals and arguments to get the, to get away from this. And the district court took the position and the order says, no, no, no, no, no. This is what you all said is how you do it. And in your summary judgment motion, this is how you do it. You are not, in fact, you said you're not stating it correctly. You're not characterizing it correctly. This is how you do it. And again, I'm looking at, I think it's volume two, page 302 of the experts of record. The overtime rate that the software displays on the wage statement is the sum of these components, i.e. the base hourly rate plus the premium component of one half, the RROP. So it's not, it's not the one hour of regular rate of pay plus .5 regular rate of pay. It's one hour base rate plus regular rate of pay. Now, they've taken that language and they said, well, that's just the wage statement. That's just what the wage statement says. But if you continue reading the declaration of Mr. Kysershot, he goes through looking at Mrs. Bowen's wages for one particular period of time and the same thing. And he has the numbers here. He's got a regular rate of pay of $9.76. But when they calculate the overtime, they add the premium component to .02 hours times 9.73. Not 9.76, which is the regular rate of pay, but 9.73, which is the straight time base rate. So they are not paying 1.5 times the regular rate of pay by their own admission in black and white. So we would submit that that cuts through all the hypotheticals about how they say they do it. And, you know, everything divorced from what the record says. And what Judge Bernal said, hey, this is the way you guys said you do it. Mr. Wall, is the question really before us that you may have a formula that might be better for employees on average, but that's not necessarily the formula prescribed by California law under Section 510, is it? I mean, the formula is overtime shall be compensated at the rate of no less than one and one-half times. The fact that, okay, but the fact that, as I understand your argument, there may be some short-cutting because if you have one time say the standard rate plus .5 as to the regular rate, that might not come out exactly as to 1.5 as to the regular rate. And so you're essentially saying there may be some shortfall to the employees because of that. In a nutshell, that's what you're saying basically. But the fact that it may be a different figure on average, how does that all of a sudden you jump to the next nexus that it's the formula that's prescribed by California law that doesn't necessarily follow that it's a violation of California law in terms of how they're calculating? Well, I'll be honest, I'm not sure exactly what the court's getting at. I apologize for the way I worded it. I was doing well halfway through it, but it's a little bit convoluted. But my point is the hypothetical you note may on occasion result in perhaps a better pay for the employees on average, but the real issue is, is that the formula that's prescribed by California law under Section 510? Well, Your Honor, the 510 does not set forth a calculation. It doesn't say this is how you have to do it. Well, that's right, that's right. And so you do see cases where they do it different ways. Right. But the statutory command is no matter how you do the calculation, it's got to the end result has to be 1.5 times the regular rate of pay. And again, you have the district court and it's part, it's over on the partial summary judgment. It goes through I think about three, perhaps four examples from the wage statements. And it goes through the calculations and it says each time it's less than 1.5 times the regular rate of pay. Meaning in each of these four instances based upon targets on records, they are not paying 1.5 times the regular rate of pay as the statute commands. So frankly, Your Honor, from our perspective, it's kind of game over. That's it. Now again, this really only happens when you have extra pay, such as shift differentials in the holiday premiums. If someone is working at a base rate, that's going to be without any additional compensation, bonuses, whatever, the base rate will be the regular rate of pay. Now again, it goes to what the court inquired of counsel before. The class is defined in terms of folks who receive this type of compensation. So we've limited the class and the case is brought on behalf of folks who suffered, only the folks that suffered from the way they do this calculation, which we contend is in violation of California law. They were not paid. Again, I think that the 510 kind of commands how you have to do the math. But if they want to do it a different way, you know, I can't argue that the statute says otherwise. I would be reading something that the words are not there. But the words that are there require that the result is, and forgive me, Your Honor, again, no less than 1.5 times the regular rate of pay. And I wanted to address the issue of, the court, I think before with counsel was discussing with counsel the public policy, which, you know, that this court is obligated to do a little crystal ball gazing in terms of figuring out what the Supreme Court would do in a situation like this. And again, they say we only have Alvarado. We say no, just like the Alvarado court said, we've got 510 and we've got the wage order, which command what that result must be. And the way in which you look at and evaluate these methodologies is with an eye towards worker protection and the liberal construction in favor of the workers. Now, again, the way that they do the calculation, it makes the overtime cheaper and cheaper. Again, the only situation that they can point to where the employee would benefit is where the employee works overtime at a shift differential, which, again, I won't go through that again, but that's a pretty small, if you look at all the examples they give, it's always 30 hours of regular work and 5 hours of shift differential. In other words, shift differential is typically, you know, a minor component, if you will, of the calculation. So, what they're saying is that there are some instances, there's actually one method, one way in which you can actually increase for the employee, and that is when you're asking the employee to work overtime on the most undesirable shifts. Well, that's not the mass of employees. The mass of employees are like the folks here. They're working mostly overtime, excuse me, mostly regular rate, mostly regular hours. They're working some shift differential, if they're willing to work those undesirable shifts, and we know they're not working holiday premiums because we all know what the holidays are. You've got your winter holidays. You've got Thanksgiving, et cetera, with the stores that have the Black Friday sales and stuff. In other words, the opportunity for holiday premium is not every day. So, once again, you're talking about, they're pointing to the one instance in which the employee could not, or may benefit, and that is in the most minor and least practical and least common effort. And I would argue that in Alvarado, in evaluating Marin, they looked at that, and they said, well, there's an argument that part-time employees here are going to make out like a bandit, and the full-times won't. And the court, they said, that's okay. This is the way you do it. There's going to be some instances where it won't work out exactly how we intended, but overall we're protecting the employees, and that's the important thing. And there's one more aspect I'd like to point out to the court, is in the reply brief, they mention a windfall. They present a calculation and say that there's a windfall, but I think if you look at that calculation, it's, I don't know if it's a typographical error or what, but what they did was they paid the overtime at the straight-time rate, and then they also paid an additional overtime at 1.5 times the regular rate of pay, and said, oh, well the employer's getting windfall of hundreds of dollars. In other words, they paid the overtime twice, once at the standard rate, and then again at the full 1.5, and they charge us with that and say, oh, well, plaintiff's method. Well, that's not how we do it. We pay it once at 1.5 times the regular rate of pay. We don't add an additional overtime straight point. Now, if you do it the way it's supposed to be done, you're talking about a, quote, unquote, windfall of $20. So I just wanted to present that correctness to the court. If the court has any, unless the court has questions, I'll stand down. Thank you. Thank you very much. Thank you. Thank you very much. The Kaiser Shaw Declaration lays out exactly how Plaintiff Bowen was paid. And demonstrates that she was paid correctly, taking into account the shift differential, the regular rate of pay, and her overtime hours. The confusion which plaintiffs injected both at the trial court level and before this court is that Judge Bernal was talking about the methodology for formatting the wage statements and how the different components of compensation were broken apart and displayed in the wage statement. That's not the same as what she was actually paid, and he made no finding that she wasn't paid correctly. And in fact, as we've mentioned, as we've made clear in our briefs, two different times when they moved, when they opposed our motion for summary judgment on the wage statement claim and when they moved for class certification, they affirmed how Target pays overtime wages and affirmed that they paid all straight-time wages for that first hour of components. So it's simply untrue that if there's anything in the record that suggests that we weren't paying Ms. Bowen or Ms. Williams or anybody else incorrectly in terms of the overtime wages. But unfortunately, Judge Bernal adopted what they said their allegation was, and on that basis said, well, then you're only paying base rate plus half regular rate of pay, and so that's the issue. We've asked the court to take judicial notice of their admissions and base those admissions, view the allegations in the correct frame, which is that you are paying one-half times the total regular rate of pay as opposed to paying the straight-time wages plus half of the regular rate of pay, and that's the legal issue which we think the court can decide. I'm not quite sure what Mr. Brooks was referring to, but we did illustrate in our reply, and this is on pages 14 and 15, the absurdity of their position that you do not include all hours rather than just non-overtime hours in the device or when figuring out the regular rate of pay. So we gave the hypothetical of Amy and Bob, who worked a number of hours, and showing that if Amy worked only non-shift differential hours, she would make $855 in total wages, while if Bob worked a single shift differential hour, and using their methodology of dividing only by the non-overtime hours, he would make $963.06 or $108.06 more than Amy, simply because he worked one shift differential hour. I would hope we could all agree that's an absurd result. If you do it properly, he would have made an additional $1.06 in overtime, which is commensurate with working one shift differential hour. So that's what's fair about this. The shift differential payment is paid as an incentive for people to work, or to reward them for working less desirable hours. Under Target's methodology, if they work it, they get exactly what they're promised. They get the $16, and then they get their half-hour premium. Again, under their methodology, even though they were promised $16 an hour, that gets taken away from them, because now Target's paying less than $16 an hour for the first hour, and that just can't be right. Mr. Brooks says, well, but that's an exceptional instance, so let's look at it generally. Well, if we look at it generally, we should be adopting a general principle that applies everywhere. And the general principle is exactly what all the courts that we've cited to this court say, which is, when you say one-half times regular rate of pay, what you really mean is, you pay the one-hour component at the applicable straight-time rate, again, base, shift differential, holiday premium, whatever, and then you pay the half-hour premium. We've literally cited dozens of cases that say this. Not a single case, not a single case, says that you do it their way. This is an unprecedented construction of the law. Totally belies what all the other courts are saying. And, Counsel, I think you've exceeded your time. Okay. Well, thank you so much for your patience and your attention this morning, Your Honors. Thank you both for the helpful argument. The case has been submitted. We are adjourned for the day. Thank you. All rise. This court for this session stands adjourned.
judges: TASHIMA, LEE, Bennett